IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

GERALD HOWARD,

         Petitioner,                No. 2:11-cv-0991 JAM CKD P

     vs.

M. MARTEL,                             ORDER

         Respondent.

_____/

I. Introduction

        Petitioner is a state prisoner who seeks habeas relief pursuant to 28 U.S.C. § 2254 for his 2008 conviction for first degree murder with special circumstance, and his resulting sentence of life without the possibility of parole. Petitioner commenced this action on April 13, 2011 and was appointed counsel on August 26, 2011. (Dkt. Nos. 1, 20.) Following a status conference, petitioner was granted leave to file an amended petition. (Dkt. Nos. 28, 29.)

        Pending before the court is petitioner's July 20, 2012 motion to stay this action pursuant to Rhines v. Weber, 544 U.S. 269 (2005) while petitioner exhausts state remedies as to a new claim. (Dkt. No. 49 ("Mtn.").) Along with his motion, petitioner submits an amended petition containing two previously-exhausted claims (Claims 1 and 2) and an unexhausted claim (Claim 3). (Dkt. No. 49-1 ("Am. Pet.").) Respondent has filed an opposition to the motion, and

1   petitioner has filed a reply.  (Dkt. Nos. 50, 52.)  For the following reasons, the court will grant

2   petitioner's motion to stay.

3   II.  Discussion

4                    Under Rhines, the court may stay a mixed petition containing both exhausted and

5   unexhausted claims pending exhaustion of the unexhausted claims if petitioner shows that (1) the

6   unexhausted claims are potentially meritorious; and (2) petitioner had good cause for his earlier

7   failure to exhaust state remedies.  As to the unexhausted Claim 3, the court addresses these

8   factors in turn.

9   A.  Merits

10                   Claim 3 asserts that petitioner "was denied his right to effective assistance of trial

11  counsel in violation of the Sixth and Fourteenth Amendments when trial counsel failed to

12  adequately investigate and present a defense based on diminished actuality."  (Am. Pet. at 32.)

13  1.  Facts

14                   As background to this claim, the court recounts the following facts set forth in the

15  January 8, 2010 opinion of the Court of Appeal, Third Appellate District:

16              Defendants Gerald Howard and Carmel Murphy lured Donte
                Rogers to a park, shot him in the head and abdomen, and emptied
17              the pockets of his pants.  In a joint trial with separate juries,
                Howard was found guilty of first degree murder while lying in wait
18              and misdemeanor petty theft, both while armed.  Murphy was
                found guilty of first degree murder and robbery, both while armed.
19
                Howard was sentenced to life without the possibility of parole for
20              the murder, an additional one year for the arming enhancement,
                and an additional six months for misdemeanor theft. . . .
21
                Murphy was sentenced to life without the possibility of parole for
22              the murder, an additional one year for the arming enhancement,
                and an additional three years (stayed) for the robbery.
23
                . . .
24
                Howard's defense was that he was the "duped pawn" and Murphy
25              was the "queen."  To support his defense, he introduced the
                testimony of Tawon Woodruff, who had met Howard on a number
26              of occasions.  According to Woodruff, Howard was "weak-

                                            2

1        minded," unintelligent, and did things he did not want to do.
2        Howard also introduced the testimony of his sister, Leslie Knight.
         According to Knight, Howard was slow to understand things and
3        gullible.

4    (Dkt. No. 49-6 at 2-3.)

5            In the Amended Petition, petitioner asserts the following factual basis for Claim 3:

6        A [June 2012] neuropsychological evaluation of Mr. Howard
         revealed many things.  As noted by Dr. Edwards, "Mr. Gerald
7        Howard is a psychiatrically very sick man in spite of being on
         antipsychotic and antidepressant medication.  His relationship with
8        reality is changeable and colored by depression and by paranoid
         ideation." Ex. B., p. 6.
9
         Mr. Howard suffered head trauma when he was about six or seven
10       years old and again when he was about 15 or 16 years old.  The
         traumatic injuries most likely resulted in brain damages which
11       triggered seizures.  Id.

12       Mr. Howard has suffered from various forms of mental illness
         since he was a child.  Initially, he was diagnosed with ADHD, but
13       his parents refused the medication.  He was diagnosed with
         Dysthymia in school. Ex. B., p. 2.  Mr. Howard was committed to
14       a psychiatric hospital in 2004 in San Diego and was diagnosed
         with Major Depressive Disorder.  Following his arrest on the
15       present charge, Mr. Howard suffered a psychotic breakdown with
         auditory hallucinations.  Ex. B., p.2.
16
         It is Dr. Edwards' opinion that this information should have been
17       introduced into evidence as a mitigating circumstance.  Ex. B., p.
         4.  Under California law, evidence of a mental condition can
18       establish a defense of diminished actuality to show that he actually
         lacked the mental state required for the crime.
19

20   (Am. Pet. at 32-33, citing Dkt. No. 49-3 (Am. Pet., Ex. B).)

21   2. Legal Analysis

22           Petitioner argues in Claim 3 that his trial counsel rendered ineffective assistance

23   by failing to adequately investigate his mental health problems and defend him on that basis.  If

24   and when the California Supreme Court denies Claim 3 on the merits, this court will necessarily

25   review whether that decision was an "unreasonable application" of Supreme Court precedent

26   under AEDPA.  For purposes of the instant motion, the court is tasked with determining whether

1    Claim 3 is "potentially meritorious" under Rhines.

2         The test for demonstrating ineffective assistance of counsel is set forth in

3    Strickland v. Washington, 466 U.S. 668 (1984).  First, a petitioner must show that, considering

4    all the circumstances, counsel's performance fell below an objective standard of reasonableness.

5    Strickland, 466 U.S. at 688.  To this end, the petitioner must identify the acts or omissions that

6    are alleged not to have been the result of reasonable professional judgment.  Id. at 690.  The

7    federal court must then determine whether in light of all the circumstances, the identified acts or

8    omissions were outside the wide range of professional competent assistance.  Id.

9         Second, a petitioner must affirmatively prove prejudice.  Strickland, 466 U.S. at

10   693.  Prejudice is found where "there is a reasonable probability that, but for counsel's

11   unprofessional errors, the result of the proceeding would have been different."  Id. at 694.  A

12   reasonable probability is "a probability sufficient to undermine confidence in the outcome."  Id.

13        In extraordinary cases, ineffective assistance of counsel claims are evaluated

14   based on a fundamental fairness standard.  Williams v. Taylor , 529 U.S. 362, 391-93 (2000).

15        Under Rhines, a district court abuses its discretion to grant a stay when

16   petitioner's unexhausted claim is "plainly meritless."  544 U.S. at 277; see also Cassett v.

17   Stewart, 406 F.3d 614, 623-624 (9th Cir. 2005) ("We now join our sister circuits in adopting the

18   Granberry[1] standard and hold that a federal court may deny an unexhausted petition on the merits

19   only when it is perfectly clear that the applicant does not raise even a colorable federal claim.").

20        Respondent argues that Claim 3 does not meet this low bar.  He cites Stokley v.

21   Ryan, 659 F.3d 802 (9th Cir. 2011), in which the Ninth Circuit affirmed the district court's denial

22   of an ineffective assistance claim.  In that case, the "record compel[led] the conclusion that

23   counsel generally undertook 'active and capable advocacy' on Stokley's behalf" (id. at 812), and

24   the Ninth Circuit rejected the claim that trial counsel "was required to order an entire battery of

25   _____

26        [1] Granberry v. Greer, 481 U.S. 129, 135 (1987).

4

1   neuropsychological tests." (Id. at 813.)  At this stage of the instant case and on a different set of

2   facts, Stokley does not foreclose a favorable ruling on the merits of petitioner's ineffective

3   assistance claim.

4        Respondent also cites Earp v. Cullen, 623 F.3d 1065 (9th Cir. 2010), in which the

5   Ninth Circuit affirmed the denial of an ineffective assistance claim after "numerous" evidentiary

6   hearings.  Id. at 1068.  Earp claimed trial counsel was ineffective based on (1) inadequate

7   investigation of organic brain damage; and (2) inadequate investigation of Earp's background.

8   (Id. at 1075.)  After reviewing a complete evidentiary record, the Ninth Circuit "agree[d] with the

9   district court's finding that 'the possibility of brain damage was carefully considered before being

10  excluded[,]'" and rejected Earp's ineffective assistance claim.  (Id. at 1077.)  However, as before,

11  the Ninth Circuit's fact-driven conclusion does not foreclose a "potentially" favorable ruling on

12  the merits of petitioner's claim.

13       In reply, petitioner cites Caro v. Woodford, 280 F.3d 1247 (9th Cir. 2002), in

14  which the Ninth Circuit held that defense counsel's failure to fully investigate Caro's brain

15  damage and present it at the sentencing phase constituted ineffective assistance of counsel.  As in

16  Earp, the Ninth Circuit weighed the evidence adduced in an evidentiary hearing in reaching its

17  conclusion.  The Ninth Circuit concluded that, on the facts presented, "counsel's failure to

18  investigate or present evidence of Caro's brain damage was not strategic" and thus could not be

19  excused "as a matter of tactical decisionmaking."  Id. at 1255.  Rather, counsel's performance

20  was "constitutionally deficient" and prejudicial to Caro.  (Id. at 1256-1258.)

21       In light of these cases and for purposes of ruling on petitioner's Rhines motion,

22  the court concludes that Claim 3 has sufficient potential merit to go forward.

23  B.  Good Cause

24       Petitioner asserts that his serious mental health problems and lack of appointed

25  counsel in state post-conviction proceedings constitute good cause for failing to timely exhaust

26  Claim 3.  In a June 2012 psychological evaluation of petitioner, attached to the motion to stay,

1   Dr. Daniel Edwards found that petitioner suffered from various mental disorders, including

2   Cognitive Disorder, NOS; Major Depressive Disorder with psychotic features; Schizophrenia,

3   paranoid type; and Borderline and Antisocial Personality Features.  (Dkt. No. 49-3 at 7.)  As to

4   general neurophysical deficits, Dr. Howard concluded that petitioner was "affected in a number

5   of areas such as Executive Functions, Attention and Concentration, Speed of Information

6   Processing, Spatial Skills, Verbal/Academic Skills, Verbal Learning, Memory, Motor Control,

7   and Fine Motor Skills."  (Id. at 5.)

8          Moreover, after petitioner's current habeas counsel was substituted in on

9   September 13, 2011, it "took new counsel time to obtain and review the trial transcripts (about

10   3000 pages), obtain and review trial counsel's file (four bankers boxes), meet with the client in

11   prison, secure an expert and make arrangements for the expert to meet with [petitioner] in

12   prison" and prepare the amended petition.  (Dkt. No. 49 at 7.)

13          Rhines does not go into detail as to what constitutes good cause for failure to

14   exhaust, and the Ninth Circuit has provided no clear guidance beyond holding that the test is less

15   stringent than an "extraordinary circumstances" standard.  Jackson v. Roe, 425 F.3d 654, 661–62

16   (9th Cir. 2005).  Several district courts have concluded that the standard is more generous than

17   the showing needed for "cause" to excuse a procedural default.  See, e.g., Rhines v. Weber, 408

18   F. Supp. 2d 844, 849 (D.S.D. 2005) (applying the Supreme Court's mandate on remand).  This

19   view finds support in Pace v. DiGuglielmo, 544 U.S. 408 (2005), where the Supreme Court

20   acknowledged that a petitioner's "reasonable confusion" about the timeliness of his federal

21   petition would generally constitute good cause for his failure to exhaust state remedies before

22   filing his federal petition.  544 U.S. at 416–17.

23          Respondent does not argue that petitioner lacks good cause, but limits his

24   argument to the potential merit of Claim 3, discussed above.   Here, the court finds that petitioner

25   has shown the requisite good cause for failure to exhaust Claim 3.  Nor does it appear that

26   petitioner engaged in intentionally dilatory litigation tactics.  Rhines, 544 U.S. at 277-278.

IV.  <u>Conclusion</u>

Accordingly, IT IS HEREBY ORDERED THAT:

1. Petitioner's motion for a <u>Rhines</u> stay (Dkt. No. 49) is granted, pending exhaustion of Claim 3 in the amended petition;

2. Petitioner is directed to inform this court and file a request to lift the stay within thirty days of a decision by the California Supreme Court concluding state habeas review. Failure to timely inform the court will result in dismissal of the federal claim; and

3. The Clerk shall administratively close this case for purposes of case status pending exhaustion.

Dated: September 26, 2012

CAROLYN K. DELANEY
UNITED STATES MAGISTRATE JUDGE

2
howa0991.stay